IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LAWRENCE DICKENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 16-911-GMS |
| ) | |
| LOUISE DESROSIERS, M.D., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

### I. INTRODUCTION

The plaintiff Lawrence Dickens ("Dickens") filed this lawsuit against Dr. Louise Desrosiers, M.D. ("Dr. Desrosiers"), Dr. Tamar Jackson, M.D. ("Dr. Jackson"), Deputy Warden James Scarborough, Deputy Warden Phil Parker, Warden David Pierce, and Connections Community Support Programs, Inc. ("Connections"), on August 8, 2016 in the Delaware Superior Court. (D.I. 1, Ex. 4.) The case was removed to the District Court on October 7, 2016. (D.I. 1.) The Complaint raises three claims relating to an injury Dickens sustained while playing softball at the James T. Vaugh Correctional Center ("JTVCC"). (D.I. 1, Ex. 4 at ¶ 14.) Specifically, Dickens alleges (1) a 42 U.S.C. § 1983 claim and a violation of his Eight Amendment rights against Dr. Louise Desrosiers, M.D., Dr. Tamar Jackson, M.D. (collectively, the "Doctor Defendants") and Deputy Warden James Scarborough, Deputy Warden Phil Parker, Warden David Pierce (collectively, the "Warden Defendants"); (2) a medical malpractice claim against the Doctor Defendants; and (3) a *respondeat superior* claim against the Connections. (D.I. 1, Ex. 4.)

The Warden Defendants filed the instant motion to dismiss for failure to state a claim on October 18, 2016. (D.I. 5.) For the reasons stated below, the court will deny the Warden Defendants' motion.

## II. BACKGROUND

On August 9, 2014, Dickens was playing softball at the JTVCC when he collided with another player and suffered a bicep tendon injury. (D.I. 1, Ex. 4 at ¶¶ 15-17.) On August 11, 2014, Dr. Jackson examined Dickens' injury and created a Progress Note in Dickens' file indicating Dickens' self-reported symptoms, recorded her diagnosis of Dickens with a bicep tendon rupture, and referred Dickens to "PT/Ortho." (D.I. 1, Ex. 4 at ¶ 17.) Dr. Jackson also noted in Dickens' file that he should visit with a physical therapist and an orthopedist, Dr. Richard Dushuttle, M.D., by August 13, 2014. (D.I. 1, Ex. 4 at ¶ 19.)

Dickens did not visit Dr. Dushuttle until August 28, 2014. (D.I. 1, Ex. 4 at ¶ 20.) Dr. Dushuttle's Progress Note included Dickens' diagnosis of a "[r]upture distal biceps tendon" and recommended surgery be done "very soon" because "ideal time to fix the tendon is 5 to 10 days" post-injury and since it was already "[t]hree weeks post injury, surgery may not help and could make him worse." (*Id.*) Upon Dickens' return to JTVCC that same day, Andrew Gallaher, R.N. completed a Department of Corrections ("DOC") form entitled "Off Site Return (Progress Note)" which stated that the "[s]pecialty clinic referral recommendation" was "Surgery to Repair Bicep tendon (Left extremity)." (D.I. 1, Ex. 4 at ¶ 21.) The DOC form also indicated that follow-up was needed "ASAP." (*Id.*)

On September 4, 2014, Dr. Desrosiers created a Progress Note in Dickens' file where she wrote that she requested the repair of Dickens' left bicipital tendon. (D.I. 1, Ex. 4 at ¶ 22.) Dr. Desrosiers also completed a "Chronic Disease Clinic Follow-Up" form which noted the ruptured

2

tendon, but did not include a referral to a specialist. (D.I. 1, Ex. 4 at ¶ 23.) An October 14, 2014 Progress Note stated that Dr. Dushuttle called to cancel Dickens' scheduled surgery because it was "too late to repair." (D.I. 1, Ex. 4 at ¶ 24.)

On October 20, 2014 and October 24, 2014, Dickens inquired about the status of his surgery. (D.I. 1, Ex. 4 at ¶¶ 25-26.) In response, a nurse referred Dickens to "medical records for chart review." (D.I. 1, Ex. 4 at ¶ 26.) Sometime after his inquiry Dickens learned that his surgery was canceled. As a result, Dickens filed two medical grievances and one regular grievance that was later converted into a third medical grievance. (D.I. 1, Ex. 4 at ¶ 27.) In response to one of his grievances, the DOC allowed Dickens to review his medical records. (D.I. 1, Ex. 4 at ¶ 29.) The DOC also granted Dickens a hearing on another one of his grievances. (D.I. 1, Ex. 4 at ¶ 30.) At the hearing, the DOC denied Dickens' grievance because the DOC determined that it followed the proper policy with respect to Dickens' treatment in light of the fact that Dr. Dushuttle canceled Dickens' surgery. (*Id.*) No action was taken on Dickens' third grievance. (D.I. 1, Ex. 4 at ¶ 28.)

On October 30, 2014, Dr. Jackson met with Dickens and requested that he be scheduled to see Dr. Dushuttle and to begin physical therapy. (D.I. 1, Ex. 4 at ¶ 32.) On November 6, 2014, one week later, a physical therapist created a Progress Note indicating that Dickens suffered from pain and weakness related to his left bicep rupture. (D.I. 1, Ex. 4 at ¶ 33.) The physical therapist also noted that Dickens was supposed to have had surgery on September 4, 2014, "but was not scheduled to see the surgeon till [sic] mid-October, at which time he was told it was too lete [sic] to fix it." (D.I. 1, Ex. 4 at ¶ 33.)

On December 4, 2014, Dickens attended an appointment with Dr. Dushuttle who recorded in a Progress Note that Dickens' condition had worsened since his last visit. (D.I. 1, Ex. 4 at ¶ 34.) He further "advised pt it is too long to do surgery at this time. As explained to patient previously

3

time was of the essence in surgically repairing the tendon." (*Id.*) Following Dickens' return from his appointment with Dr. Dushuttle, an "Off Site Return (Progress Note)" was prepared and stated that the "Consultants Recommendation" was to "[f]ollow-up as needed." (D.I. 1, Ex. 4 at ¶ 35.) Dickens continued seeing a physical therapist through December 2014. (D.I. 1, Ex. 4 at ¶ 36.)

Count I of Dickens' Complaint alleges a violation of 42 U.S.C. § 1983. (D.I. 1, Ex. 4 at ¶¶ 38-48.) Dickens contends that the Doctor Defendants knew of Dickens' injury and the limited window of opportunity to repair the injury, but failed to promptly notify the Warden Defendants or advocate on Dickens' behalf to the Warden Defendants regarding the severity of the injury and the need for immediate medical attention. (D.I. 1, Ex. 4 at ¶¶ 42-44.) Dickens also alleges that the Warden Defendants were responsible for approving the transportation of inmates to outside medical facilities and that the Warden Defendants refused to approve or transport Dickens promptly to Dr. Dushuttle. (D.I. 1, Ex. 4 at ¶¶ 40, 46.) Dickens further claims that the Warden Defendants' actions were committed intentionally, recklessly, or with deliberate indifference to Dickens' known medical need for prompt medical treatment in violation of his Eighth Amendment rights. (D.I. 1, Ex. 4 at ¶ 47) Count II alleges a medical malpractice claim against the Doctor Defendants for their breach of the standard of care. (D.I. 1, Ex. 4 at ¶ 52.) Finally, Count III alleges a *respondeat superior* claim against Connections as a result of the failures of their agents or employees to properly notify and inform the DOC of Dickens' need for immediate medical care. (D.I. 1, Ex. 4 at ¶ 55.)

### III. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal where the plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the court "accept[s] all factual allegations as true, construe[s] the

4

complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The issue for the court is "not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). As such, the touchstone of the pleading standard is plausibility. *Bistrian v. Levi*, 696 F.3d 352 365 (3d Cir. 2012). Plaintiffs must provide sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## IV. DISCUSSION

The Warden Defendants dispute whether Dickens has pled sufficient facts that "unequivocally state" how each Warden Defendant is responsible for arranging inmate transportation to medical appointments and that the Warden Defendants knew of Dickens' medical condition and acted with deliberate indifference. (D.I. 19 at 2.) Dickens argues that at the motion to dismiss phase, the court should "look to see whether Mr. Dickens has made a plausible claim against the DOC Defendants, taking all factual allegations as true and giving Mr. Dickens the benefit of all reasonable inferences." (D.I. 18 at 7.) The court agrees and finds that in drawing all inferences in favor of the non-moving party, Dickens has pled sufficient facts to given rise to a § 1983 claim against the Warden Defendants.

In order to make out a claim under § 1983, a plaintiff must establish that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured by the constitution or laws of

the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011). Dickens claims that his rights under the Eight Amendment of the Constitution and Article 1, Section 11 of the Delaware Constitution were violated. (D.I. 1, Ex. 4 at ¶ 47.) The Eighth Amendment, through its prohibition of cruel and unusual punishment, forbids the imposition of "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32 (1993). In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that prison officials violate the Eighth Amendment when they are deliberately indifferent to a prisoner's serious medical needs. *Id.* at 104-05. To succeed on an Eighth Amendment medical care claim, "a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (alteration in original) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

First, contrary to the Warden Defendants' argument, Dickens is not required to "unequivocally state" what each individual defendant has done to survive the motion to dismiss. (D.I. 6 at 3.) "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief" requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). Here, Dickens provided sufficient factual grounds that not only give notice to the three Warden Defendants of Dickens' claims against them, but also informs them of Dickens' entitlement to relief. Specifically, Dickens claims that the Warden Defendants, who are responsible for approving transport out of the JTVCC to medical facilities, failed to transport him or approve his

transport to and outside doctor and such inaction amounts to deliberate indifference to Dickens' serious injury.

Dickens' Complaint provides sufficient factual background for his claims. After Dickens was injured while playing softball, the Doctor Defendants and other Connections medical staff made several Progress Notes in Dickens' medical file and a DOC specific form indicating that Dickens required immediate medical attention for his bicep tendon injury. *See* (D.I. 1, Ex. 4 at ¶¶ 17-34.) On August 11, 2014, both a Connections nurse and Dr. Jackson pointed out that Dickens needed to see a physical therapist and an orthopedist by August 13, 2014. (D.I. 1, Ex. 4 at ¶¶ 16-17.) It was not until fifteen days later, on August 28, 2014, that Dickens was transported to the orthopedist, Dr. Dushuttle. (D.I. 1, Ex. 4 at ¶ 20.) During this appointment, Dr. Dushuttle specified that the ideal time to fix the tendon was within five to ten days of the injury, but if surgery were still to take place, it should be done "very soon." (*Id.*) Upon Dickens' return from Dr. Dushuttle's office, the DOC created a form that indicated that the "[s]pecialty clinic referral recommendation" was "Surgery to Repair Bicep tendon (Left extremity)" and that follow-up was needed "ASAP." (D.I. 1, Ex. 4 at ¶ 21.) Again on September 4, 2014, Dr. Desrosiers expressed in a Progress Note that she requested that the left bicipital tendon repair be performed. (D.I. 1, Ex. 4 at ¶ 22.) On October 14, 2014, Dr. Dushuttle canceled the appointment because it was "too late to repair." (D.I. 1, Ex. 4 at ¶ 24.) On October 30, 2014, Dr. Jackson requested that Dickens be scheduled to see Dr. Dushuttle. (D.I. 1, Ex. 4 at ¶ 32.) On December 4, 2014 Dickens was transported to Dr. Dushuttle for the first time since August 28, 2014. (D.I. 1, Ex. 4 at ¶ 34.) During this appointment, Dr. Dushuttle completed a Progress Note expressing that Dickens' condition had worsened despite his physical therapy sessions. (*Id.*)

At the pleading stage, Dickens is not required to detail exactly which Warden Defendant was supposed to approve Dickens' off-site transport and failed to do so. Instead, the court can infer that Dickens would not have been able to leave the prison without the consent and approval of one or all of the Wardens Defendants. The court can also infer from Dickens' Complaint that the Warden Defendants were aware of Dickens' condition and immediate surgical needs, either through the Doctor Defendants' requests for an appointment with Dr. Dushuttle or through the DOC "Off Site" form. Dickens' Complaint is not, as the Warden Defendants argue, devoid of facts that implicate the Warden Defendants. Instead, Plaintiff has pled facts that suggest the Warden Defendants could be liable for Dickens' failure to receive the prompt reconstructive surgery he needed for an injury that now leaves Dickens permanently deformed and with limited use of his arm. Therefore, the courts finds that Dickens has pled sufficient facts to give rise to a § 1983 claim against the Warden Defendants.

## V. CONCLUSION

For the foregoing reasons the court will deny the Warden Defendants' motion to dismiss. (D.I. 5.)

Dated: July 20, 2018

_____
UNITED STATES DISTRICT COURT

8